Good morning. My name is Dan Swanson and I represent the Plaintiff Appellant, Mr. Hoven. The central issue before the Court this morning is whether the Michigan public policy exception to the Employment at Will doctrine includes an employee's right of self-defense in the workplace. Mr. Hoven's position is that the public policy doctrine encompasses an employee's right to self-defense in the workplace. I'm going to present four points this morning in support of our position as to why the District Court inappropriately dismissed Mr. Hoven's complaint. First, Michigan clearly recognizes as a matter of public policy the right of self-defense. Second, the District Court narrowly and inappropriately interpreted Michigan's exception to the At Will Employment Doctrine, the public policy doctrine. Third, the District Court erred in finding Section 5N of the Michigan Concealed Pistol Licensing Act, CPLA, trumps citizens' right to self-defense in the workplace. Fourth, the District Court inexplicably ignored and failed or refused to address Mr. Hoven's constitutional arguments concerning the issue of the right of self-defense in the workplace. Your Honors, the facts of this case are compelling. I just want to spend a brief moment. On Mother's Day, June 2011 at 4.30 a.m., two armed robbers entered the Walgreens in Benton Township, Michigan. These two armed individuals grouped together three of the four people, three employees, put the gun to their head and was bringing them to the rear of the store. The second robber ran to the rear of the store where Mr. Hoven was working as a pharmacist, leaped over the counter, confronted Mr. Hoven in the little office, pointed the gun at him and began pulling the trigger. Mr. Hoven was on the phone calling 911. At that moment, Mr. Hoven, who had endured an armed robbery in this exact situation only three years earlier, pulled his license-concealed weapon, fired three times, didn't hit anyone. The armed robbers immediately took off, left through the front door. All this occurred within a few moments. Mr. Hoven exercised his right to self-defense. Sadly, this is not an isolated sort of incident. To the extent of I come from the city of Detroit, I'm very proud to say 30-minute wait time for police. Street lights, 60% of them don't work. Mr. Hoven was an at-will employee, is that correct? He was, yes. And what was the official reason that Walgreen gave for his termination? Your Honor, as you know from the record, no discovery has taken place in this case. Mr. Hoven in his complaint stated he was told he was discharged for violating the non-escalation policy, one which he had never heard of before. That was the reason he was given for the discharge. Now, Your Honors, the first point I want to make- How does it work in Michigan employment law if it's an at-will state? Okay, so in this case he's fired for violating the non-escalation policy, and maybe his point is I didn't escalate anything. They're the ones that brought in the guns. All I did was try to defuse it. But isn't the way at-will employment works, even if the employer misapplies its own policy, isn't the employee still stuck? Because you didn't even have to have an explanation in the first place, and at-will goes both ways. The employee gets to leave the next day as well. Your Honor, I agree with you to the extent of what your definition of at-will employment is in Michigan, with one huge exception, the Soka-Dolowski case. In 1982, the Michigan Supreme Court expressly carved out an exception to that at-will employment. Saying that if the termination is in violation of a Michigan public policy, the discharge can be challenged by the employee as wrongful. Recently, the Michigan Supreme Court, in the McNeil case versus Charlevoix 2009 case, re-emphasized that point in saying that this is not some narrow doctrine, this public policy. They expanded this doctrine to include a county regulation prohibiting smoking in the workplace. And they said that employees would have a claim, if they were discharged because they complained about smoking, that they would have a claim, even if they're at-will, to challenge that discharge. And the Michigan courts in this court have also... Yes? You're relying on the Soka-Dolowski case. As I understand it, that case established three different prongs... Yes. ...for showing a discharge in violation of public policy. Which prong do you contend that you're under? That would be the third prong. The employee is discharged for exercising a right conferred by a well-established legislative enactment. That is the same prong that the court in McNeil versus Charlevoix County in 2009 also cited in its opinion. So, a well-established legislative enactment. Yes. Does that mean a statute? Is that what you think that is, a right conferred by a statute? Statute, constitution, federal regulation, a federal statute, state statute, a county regulation. Now, what case would you say expands it beyond statute? I think McNeil references that, the McNeil versus Charlevoix case. And we do have statutes in this case, Your Honor, and I'm going to cite you a couple. MCLA 780.951, which is the use of deadly force in self-defense, and it specifically references in a business premises. MCLA 28.425N, the CPLA Act that says an employer shall not prohibit an employee from doing, applying for a concealed weapons license or... Go ahead. Doesn't that then say that an employer may prohibit the carrying on the employer's premises? It does, Your Honor, and that's the section that I'm challenging as being, one, inconsistent with Michigan statutes, and number two, unconstitutional. Was your constitutional claim pled initially? The constitutional claim in the complaint, no. We sought to amend it, and the magistrate said we didn't need to amend it, the complaint, and that we could argue the constitutional issue in the course of the motion to dismiss hearing. She specifically cited that, and we've cited the transcript. But you concededly didn't plead it, and you also didn't appeal the denial of the motion to amend. That is true. So it's not an independent claim based on the magistrate judge's ruling that was not appealed by you. That is true, and the magistrate, again, said very specifically that she saw no reason the constitutionality issue, given the complaint as it was pled, could not be raised in response to the motion to dismiss. Did you notify the state that you were challenging the constitutionality of an act? No, we did not. Do you have a duty to do that? If it is pled in the complaint, we do. Straight up pled in the complaint. I've just looked for a copy of your complaint to refresh my memory, and I don't have it with me. So tell me how you pled the issue regarding the existence of both the self-defense statute and the statute specifically permitting the employee to have a policy not allowing a gun on the premises. Your Honor, we pled it as a public policy violation citing general Michigan public policy of self-defense. We pled the U.S. Constitution, the Michigan Constitution, and several other statutes. What part of the U.S. Constitution did you raise in your complaint? The Second Amendment, Your Honor. In the complaint? Yes. And the Michigan Constitution. Your Honor, the duty to notify a state attorney general that you're challenging the validity of a state law arises regardless of whether something's in the complaint or pled as a defense. I mean, I don't understand how. Let's just say I accept your distinction for how we can reach this issue here, but there's no way you get around the duty to notify the state that you're challenging the validity of the statute,  so, I mean, I don't know whether you want to continue to pursue this, but if you do, I can't imagine how we have the right to consider that without hearing from the state. Well, Your Honor, there is a second prong to this that I want to argue besides. I will move on. I'm asking you a threshold question. I'm just saying it's, you know, it's your complaint, it's now your appeal, and you get to decide whether you're going to push this, but if you're going to push it, I don't understand how we can proceed without hearing from the state. And so that's your choice. I'm saying you have a choice. You can say, well, you know, maybe we can rely on something else, or no, I want to notify the state and hear from them. Your Honor, I have nothing further on that point except that based upon the magistrate's decision. I asked you a question that didn't allow nothing further. It said, A, we're withdrawing our challenge to the constitutionality of this provision, 28.425N2B, the part that says employers can restrict employees from having concealed weapons or weapons at employment. You're either challenging it or you're not. We are challenging it, Your Honor. That is correct, the constitutionality, and we're also challenging it on a second basis. Okay, so we need to hear from the state then. You might well need to hear from the state if the court considered that challenge, and the lower court did not consider that challenge. Why would it make any sense for you to have gone through all this and come up here if we're to consider the constitutionality of this provision and we don't have the people we need in order to consider it? I mean, that just is a matter of thinking about, I mean, lawyers have some obligation to think about the appropriate use of judicial resources. Well, Your Honor, there's a second prong that we're arguing this on besides the constitutionality in terms of where we're coming from, and that prong is the case of Mitchell v. The University of Kentucky. And in that case, the Kentucky Supreme Court held very clearly that in Kentucky they had, like we have in Michigan, statutes providing for self-defense and for concealed weapons being able to be placed in the glove box of automobiles. They also had a statute that provided that universities could prohibit employees from having guns on their premises. And the Kentucky Supreme Court held that there was a conflict. They never had to get to the constitutional issue. And the conflict was the right of self-defense trumped the university's unfettered discretion to prohibit employees from having guns in their car. And that is exactly what we have here as well. We have Michigan statutes that clearly provide for a right of self-defense. But we also have a Michigan statute that provides that the employer may decide not to allow concealed carry on the premises. And that's exactly what they had in Kentucky. They had a statute that allowed universities, as an employer, in their unfettered discretion to prohibit employees from having guns anywhere on the university premises. And the court held that the right of self-defense, specifically the statute permitting handguns in glove compartments, trumped that and there was an internal conflict in Kentucky law. So you'd like for us to follow that. Let me ask you another question. Very good. We have a landscape. Michigan has statutes that provide immunity from prosecution if an individual acted in self-defense. Yes. It has this other statute we've been referring to about employers being able to prohibit employees from carrying guns onto the premises even if they have a permit. Why don't those two things represent the coexisting public policy of the state of Michigan? And while even if one of those two provisions, the employer one, is unconstitutional, why does it matter? I mean, this court doesn't determine what the public policy of Michigan is. We're looking to the public policy of the state as articulated in its statutes. So, I mean, how does your claim necessarily raise the issue of the constitutionality of the employer statute? First of all, Your Honor, I believe this court has within its authority, as does the district court, the authority to determine Michigan public policy when the courts of Michigan have not spoken upon the issue. Well, the legislature has spoken, however. And it's spoken in a way that the case we've been referring to, which I seem not to be able to remember the name of. Mitchell versus Kentucky University. No, no, no. The Sudolowski case. Yeah. The Sudolowski, well, whatever it is. I mean, that case is specifically referring to this kind of legislative articulation of public policy. It does. In the University of Kentucky case, again, it dealt with this question of the public policy of Kentucky. Does it allow for a right exception to the at-will employment based upon self-defense? Well, that is something we could look to. Yes. But certainly that's not something we're required to follow or consider persuasive. I would agree. One of the issues in finding public policy many times is have other states found public policy rights as an exception to at-will? And I've cited a number of cases which have. I thought that the Mitchell case involved a statute that permitted individuals with licensed concealed weapons to store the weapon in a vehicle. It did. Okay, so that's not the right to self-defense that's involved here. It's a much more specific kind of statute. The court references that it has part of a right of self-defense, part of the right to have weapons. Those rights to have a concealed weapon in self-defense, the court says, are connected and cannot be my time is up. Yes, please. I just want to go back to forget for a second what the Kentucky Supreme Court said about this. I haven't read the opinion, but I will go back and read it. But don't answer this question by referring to it. Answer this question based on what I'm going to say. Your conflict between statutes point. The normal rule is when you have two statutes in tension with each other, the first job of a court to do is to try to preserve both. We're not searching for conflicts in order to eliminate one statute. And here I'm struggling with why a general right to self-defense can't coexist with a rule that says employers are allowed, they don't have to, but they're allowed to say employees can't bring guns to work, right? You can still use self-defense. It's not eliminating that right. They're just saying if the employer chooses, they can say you can't have a gun as your form of self-defense. So I think they can work together. Even to the extent you're worried about that, you usually say the specific trumps the general. Right of self-defense, that's the general. But the far more specific provision is the provision that says employers have a right, though they don't have to, to say to employees you can't bring guns to work. So forget the Kentucky case. I'll go read it. Maybe you're right. But I don't understand how those very traditional canons don't answer your point. I think the problem is the right to self-defense is, as the Supreme Court has held, a very substantial right. And in the circumstances where you have employees in workplaces that are inherently dangerous, subject to armed robberies, et cetera, I think that to limit and give unfettered discretion to an employer really violates the whole sense of self-defense under the Second Amendment and frankly conflicts with Michigan statutes that say in a business, in a workplace, employers can't discriminate against people who seek or make application for concealed weapons, et cetera. Thank you. Thank you. Thank you. May it please the Court, Adam Foreman, appearing on behalf of Defendant Apelli Walgreen. I know this Court has reviewed our briefs, and I would wish to highlight only a couple points for you. I think there may be some confusion about the limits of Michigan's public policy wrongful discharge exception to at will. It is true that in Shodolsky, the Court set forth three exceptions. One of those exceptions is, for the most part, a dead issue. In 1993, the Dudowitz case said that when you are acting in accordance with a statutory right or duty, the remedy is exclusive, not cumulative. So we're really talking, at this point, about two. There seems to be a lot of discussion amongst the parties as to whether there's just three or just two or whether it's been expanded. I don't think that's important. I think what's important is, at this point, the Michigan Supreme Court has recognized three. Plaintiff Appellant has just acknowledged that he's proceeding on the third exception. The third exception is where an individual is exercising a right conferred by a well-established legislative enactment. If you didn't have this provision, .42N2B, and all you had was the general right to self-defense, wouldn't that be a pretty serious argument here? I actually don't think that 5N has the role that has been portrayed to this Court. 5N certainly helps because I agree that it does show what Michigan's public policy is. But to start with the proposition that 5N is unconstitutional, unlawful, turns the whole process on its head. It's not the employer that has the legal obligation to demonstrate a statute that gave it the authority to discharge someone. It's the plaintiff's obligation to demonstrate a well-established legislative enactment directed at conferring rights on employees. Let me put it a little differently. You have a general right to self-defense. It doesn't distinguish employees or anyone else. It just says you have a right to self-defense. And then I think they are allowed to say, even though it's a legislative policy to have this rule that says employers can restrict employees from bringing guns to work, they're allowed to say that's unconstitutional. I mean, surely if the legislative policy was, we have at-will employment in Michigan, but not if you're black or not if you're white. I mean, you would cast that overboard in terms of it being a legitimate public policy that could enter into the equation. So I don't understand why that argument isn't permissible, which leaves you with the general right of self-defense. And that's why I ask my question. Because, Your Honor, I believe that under Michigan law, to articulate a cognizable cause of action under the third exception of Schotowski, it's not just identifying a legislative enactment, like the criminal statutes that give you the right to self-defense. It has to be a legislative enactment that's directed at conferring rights on employees. This is a workplace tort we're talking about, wrongful discharge and an exception to at-will discharge. If what you're saying is true, if it could be any... Okay, so back to my point. So you have a public policy that isn't specific to employees and employers, but yet makes a racial distinction. You know, who cares? You know, you would still either pay attention to that, or if it was invalid, you would ignore it. So I don't understand where you're getting this idea that the only public policies that are relevant and potentially can trump at-will employment are ones that actually talk about the workplace. I'm getting it straight from Schotowski, where the Supreme Court said that if you rely on a legislative enactment, it has to be directed to conferring rights on employees. I'm relying on the Sixth Circus decision in Humaney, where it said that the legislative enactment has to address the particular conduct at issue. I'm even relying on the McNeil case, which plaintiff appellate says expanded. It didn't expand. The issue in McNeil... That's the Kentucky case? No, the McNeil case was a 2009 Supreme Court case. It was a no-smoking regulation, where the debate amongst the justices of the Supreme Court was whether a county-promulgated regulation is a legislative enactment. The majority said it was because it was consistent with Schotowski's third exception. A dissenting opinion said, I don't think so because the regulation, which was promulgated by county commissioners, is not statewide legislation. None of the justices, however, disputed that the regulation, whether you want to call it legislation or regulation, was directed at conferring rights on employees. It was. It gave them the right to be free from smoking in the workplace. If it was any statute you could point to, I as an employee could come... Your view is if the Michigan Constitution said individuals not only have a right to bear arms that the government can't take away, but individuals have a right to bear arms and consistent with the right to bear arms is the right to self-defense, and no one, private entity, public entity, can restrict that right to bear arms. So it doesn't mention employment, doesn't mention the workplace. You're saying that wouldn't enter into the equation in this case. I'm saying that may enter. In this case, yes, that's what I'm saying. It wouldn't apply to this case? If it was a prong two, it could. Remember, the exception under exception three is very limited. It's legislative enactment. I don't care about prongs. I don't understand how that constitutional provision wouldn't apply to this case. I think it's no different than what this court... You couldn't fire him for bringing a gun to work. I think, Your Honor, it's no different than the Casiz v. Walmart case that this court recently decided where the employee was discharged for testing positive for marijuana. The employee claimed that the discharge was in violation of Michigan's Medical Marijuana Act or the public policy set forth there, and what this court determined was that was not a statute that gave rights in the private employment setting. It was a statute that gave rights to individuals to be free from state action, government prosecution. That's no different than the Polona v. UPS case, also decided by the Sixth Circuit, where that very argument was made. An employee brought a gun to work. He pointed to the Ohio Constitution and said, this gives me a public policy cause of action, and the Sixth Circuit said, while you may have the general right under the Constitution to bear arms, you don't have the specific right to bring a gun into a private employer's workplace. There's no state action here. This is a private employer. So my question related to your theory that the only public policy provisions that could matter are public policy provisions that relate to the workplace. That's been your main theory, and I'm testing that by saying, if you had a constitutional provision that did not talk specifically about the workplace but said the right to bear arms is absolute, and it's not just the government that can't restrict it, no private entity can restrict it, I assume you would concede that's not this case. This is a hypothetical. But I assume you would concede that would restrict Walgreen's ability to punish someone for bringing a gun to work. It doesn't seem like much of a concession. The Constitution and the Constitution's mandates don't apply in the private employment setting. That's where I'm struggling. I just gave you a hypothetical provision that restricts everybody, state or private entity. So just make the concession. Yes, I would concede that point, Your Honor. But you're arguing that, for instance, the First Amendment, as it stands, prohibits state regulation of speech but not private employer regulation of speech. Absolutely, and that's the law in Michigan we cited to you, the Price Act case and also some decisions from the Eastern District of Michigan. You can't rely upon the First Amendment free speech if you claim you were discharged because you were going to go say something bad about a customer. It's exactly what was at issue in the Price Act case, and the Michigan court said that's not an exception to employment at will. I think that under a second exception, if you're claiming you were failing or refusing to violate the law, I agree that the law, that word the law, has been interpreted by Michigan courts to be broad, and it could be a regulation, a statute, a constitution. We don't have a second exception case. The paradigm we have here is employees claiming that he was discharged for exercising a right conferred by a well-established legislative enactment. And Michigan law makes clear that not only must it be a well-established legislative enactment, but it also must be directed at conferring rights on employees. And your best case for that limitation is what? Well, Shedelsky says that, Your Honor. I think if you also look at... I'm looking at 7.12 of the Northwest Reporter, 2nd, which seems to say when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment. Is there some other place in the opinion that says that? I'm looking at the Michigan Reporter 696.97, but if you give me a moment, I will... Just tell me what it says, and then I can find it. Specifically, 696.97 of the Michigan Reporter, the regulation of the accounting systems of utilities is not, as is the workers' compensation statute, directed at conferring rights on employees. And Humaney v. GenX, that's 390 Fed Third 901 at page 907, the Sixth Circuit said that for Shedelsky's third exception, courts must first address whether a plaintiff has identified a well-established legislative enactment that addresses the particular conduct at issue, the employment conduct. And if you look at McNeil, specifically Judge Kavanaugh's concurrence in McNeil, that's 484 Mission 95, Judge Kavanaugh specifically points out that to have a Shedelsky third exception, you need to have a legislative enactment directed at conferring rights on employees. Do we need to decide the constitutionality of this? Well, I think you hit the two primary points. I think first it's not in front of this court because the motion to amend that was denied by the magistrate judge was not appealed in 14 days. But the magistrate judge said that the constitutional issue could be raised in conjunction with the original complaint. And with the original complaint, the plaintiff did seek to rely on the constitution as a basis for his public policy claim. And I think the only thing the magistrate judge said was, you've already raised this as a potential basis for public policy. There's nothing prohibiting you from making it now. Are we talking about the same constitutional provision or is the complaint taught? I had the impression, and I've already alluded to the fact that I don't have the complaint. I had the impression that the complaint was alluding not only to the Second Amendment of the United States Constitution, but also some comparable provision of Michigan law. But this is a different constitutional issue. What do you think the magistrate judge was referring to specifically? Well, the magistrate judge was specifically referring to the constitutional challenge to 5N of the CPLA. So your adversary is correct on that point. That's what the motion to amend was seeking to do. The magistrate pretty much assured him that the magistrate at least thought that was an issue that was subject to litigation in this case. I don't think so. I think the magistrate denied it for two reasons. One, because it was prejudicial. Two, because it was futile. As to the prejudicial argument, the magistrate pointed out that the district court judge, Judge Neff, has a pre-motion conference process where the parties are supposed to identify all their arguments and defenses. And the parties went through all these hoops, did all this briefing. The judge even gave the plaintiff an opportunity to file a motion to seek certification on this issue. After the plaintiff denied that request or rejected that request, the parties started to brief. Seek certification of what issue to whom? To the Supreme Court as to whether there is a public policy exception for the defense of oneself, of others, and to carry arms, the three issues at issue in the complaint. Looking at the complaint, the complaint in paragraph 31 has a reference to the right of self-defense and defense of others is based upon constitutional statutory and common law, C.E.G. U.S. Constitution Amendment 2. I don't know whether there's any other reference to the U.S. Constitution, but the complaint only has 34 paragraphs, so I'm tending to doubt it. Does that affect what can be argued in this? This is a motion for judgment on the pleadings? I believe it does, Your Honor. I believe that the issue of whether 5N is constitutional was one that was sought to be added to this complaint, but that motion was denied. It was denying it. They said it could still be addressed. She denied the motion to amend. It didn't become part of the complaint. Okay, but are you getting this point? Even if it could, Your Honor, I still think the second argument you raised is an appropriate one. If you're challenging the constitutionality of a Michigan statute under Rule 5, you still have to notify the state, we have a concession here that didn't happen. And even if we push past that, forget that. Let's say the constitutionality was in front of you. You can still notify. I mean, if it's brought up as a defense, you can still. That's what sometimes happens in cases, that the constitutional claim defense emerges later in the case. You notify people then. You get briefing. There's a way around that. My response, Your Honor, to the issue of whether, let's assume for discussion's sake that the constitution was at issue here. Walgreens is not a state actor. The constitutional challenge to 5N was a claim that the Second Amendment of the United States Constitution precluded the Michigan legislature from passing that act. Then Mr. Hoeven, plaintiff, should have sued the state of Michigan. Walgreens did not affirmatively discharge him because the statute said, thou must fire someone if they bring a gun in the workplace. That statute didn't affirmatively require Walgreens to do anything. The statute merely said, nothing in the statute says you can't, you're prohibited from having a rule that doesn't allow guns. They didn't fire him. In fact, the plaintiff alleges that he was fired because he violated the non-escalation policy, not because he violated 5N. So whether 5N is constitutional or not really is not relevant. If 5N did not exist, plaintiff would still be obligated to identify a legislative enactment directed at conferring rights upon employees that provided a public policy exception at will discharge. The only statutes he points to are the criminal self-defense statutes. Those prohibit state action under certain circumstances, but they have no bearing on the private employment setting. So the only self-defense, we've been talking loosely about self-defense provisions. You're saying the only provisions are statutes, state statutes, that allow for someone who is being criminally prosecuted to raise the defense of self-defense against prosecution. Am I misstating that? Those are the only statutes I'm aware of that the plaintiff cited. Now, the plaintiff is also citing the Second Amendment line of cases, but I think those have no bearing here. Again, this is not the government seeking to restrict people's Second Amendment rights. This is a private employer in a private employment setting providing gun rights. And even those gun cases, even the Second Amendment gun cases that plaintiff appellant claims are changing the landscape, they all stop short of regulating private employment. And they even allow gun rights to be regulated. I couldn't bring a gun to this court today. The right to self-defense is not absolute. Well, why doesn't it analytically become simpler if you just concede that the self-defense statutes, although applicable in a criminal prosecution setting, do express a public policy for individuals to be able to defend themselves, but that right is not unlimited. And it may be limited both through just the general provision requiring a permit and through the legislature-specific recognition that an employer may prohibit carrying the weapon on the premise. I think your statement's fair, Your Honor. I'd only add that it's further limited by the confines of what can make a public policy claim under Michigan law. It just seems to me it's just a lot easier to get there if you stop quibbling about what the self-defense statutes amount to. Thank you. Thank you, Your Honor. I don't believe, Mr. Swanson, that you reserved any time for rebuttal. Okay. Well, thank you both for the argument. The case will be submitted. Would the clerk call the next case, please?